UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEAL JACOBI,

       Plaintiff                       Civil Action No. 12-14518

v.                                     HON.  BERNARD A. FRIEDMAN
                                        U.S. District Judge
                                        HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Neal Jacobi ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g),

challenging a final decision of Defendant Commissioner denying his application for

Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary

judgment motions which have been referred for a Report and Recommendation pursuant to

28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's

motion for summary judgment [Doc. #13] be GRANTED and Plaintiff's motion [Doc. #10]

DENIED.  I further recommend that Plaintiff's motion to remand [Doc. #16] be DENIED.

## PROCEDURAL HISTORY

     Plaintiff filed an application for Disability Insurance Benefits ("DIB") on November

4, 2009, alleging disability beginning June 15, 2007 (Tr. 87).  After the initial denial of the

claim, Plaintiff requested an administrative hearing, held on January 31, 2011 before

Administrative Law Judge ("ALJ") David Neumann (Tr. 25).  Plaintiff, unrepresented, testified (Tr. 28-47), as did vocational expert ("VE") Don K. Harrison (Tr. 48-53).  On February 16, 2011, ALJ Neumann found that between June 15, 2007 and the date last insured ("DLI") of December 31, 2010, Plaintiff was not entitled to DIB (Tr. 21).  On August 14, 2012, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on October 12, 2012.

## BACKGROUND FACTS

Plaintiff, born February 9, 1971, was 39 on the DLI of December 31, 2010 and 40 at the time of the February 16, 2011 decision (Tr. 21, 87).  He completed two years of college (Tr. 114) and worked previously as a driver, hi-lo driver, lab worker, line worker, and machine operator (Tr. 110).  He alleges disability due to complications of diabetes, stomach problems, and anxiety (Tr. 109).

### A.   Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently lived in an apartment in Riverview, Michigan with his mother (Tr. 29, 31).  He stood 5' 9" and weighed 150 pounds (Tr. 31).  Since June, 2007, his weight fluctuated between 144 and 163 (Tr. 31-32).   After completing a GED, he received an Associate's Degree in business from the University of Phoenix (Tr. 32).  He did not require the use of assistive devices such as knee braces (Tr. 32).  He did not experience problems reading, writing, or performing simple mathematical problems (Tr. 32).

-2-

Plaintiff last worked as a high-low operator just prior to June 15, 2007 (Tr. 33, 37). He was unable to work due to the stomach condition of gastroparesis which had worsened as a result of his inability to obtain health insurance for treatment of diabetes (Tr. 33). His doctor prescribed Bentyl for stomach pain, but the medication caused drowsiness (Tr. 33). Stomach pain was a "constant" distraction (Tr. 33). He also experienced constipation, noting that laxatives caused diarrhea (Tr. 33-34). He experienced light sensitivity due to diabetic retinopathy and range of motion limitations due to "frozen [right] shoulder" (Tr. 34). He smoked a half-pack of cigarettes daily (Tr. 35). In 2009 and 2010, he mowed lawns on a part-time basis (Tr. 36). In January, 2008, he worked briefly for a "temp" agency as a machine operator (Tr. 38).

Plaintiff was able to sit for up to an hour without changing positions but was unable to walk for more than 35 minutes at a stretch (Tr. 38). He could lift a maximum of 20 pounds, but was unable to bench press more than 40 pounds before stopping due to frozen shoulder (Tr. 39). He had not bench pressed since December, 2009 (Tr. 39). He walked on a treadmill for approximately 30 minutes each day (Tr. 39). He could bend with difficulty, but was unable to squat (Tr. 40). He did not experience problems kneeling (Tr. 40). He was able to reach with his left arm, but experienced pain when attempting to overhead reach with the right arm (Tr. 41). He experienced numbness of certain right hand fingers (Tr. 42). He generally retired between 12:00 and 1:30 a.m. and arose at 11:00 a.m. (Tr. 42). He did not experience problems attending to personal needs (Tr. 43).

Plaintiff was currently enrolled in an online accounting class, noting that he completed

one class and began another every five weeks (Tr. 43-44). He spent up to two hours every day studying (Tr. 43-44). He was able to shop, but did not perform housework except for simple meal preparation, laundry chores, and taking out the trash (Tr. 44-45). He held a current driver's license and was able to drive for up to 25 minutes (Tr. 45). He watched television for an hour at a time before requiring a position change (Tr. 46). He denied the use of recreational drugs or alcohol (Tr. 47).

## B.    Medical Evidence[1]

### 1. Treating Sources

May, 2008 treating notes by Jack Shapiro, M.D. state that Plaintiff's diabetes mellitus was "not well controlled" (Tr. 143-144, 159-160, 241-242). Dr. Shapiro noted at a two-week followup appointment that Plaintiff had since controlled his blood sugar levels and was "doing better" (Tr. 157). Notes from the following month state that the condition was "well controlled" (Tr. 155). September and December, 2008 notes state that Plaintiff felt "good" ((Tr. 151-153). September and December, 2008 glucose levels exceeded normal ranges (Tr. 138, 140). In April, 2009, Plaintiff reported stomach pains, diarrhea, and passing out the previous week (Tr. 149). He was diagnosed with acute gastopathy (Tr. 150). In September, 2009, Plaintiff reported renewed stomach pain but did not exhibit abdominal swelling (Tr. 147, 215). In November, 2009, Plaintiff reported right arm pain and continued stomach pain (Tr. 145, 213).

---

[1]Records created significantly after the DLI are included for background purposes only.

In March, 2010, testing by the Kresge Eye Institute found the presence of moderate non-proliferative retinopathy (Tr. 182, 184). The same month, Plaintiff requested a medication change, noting that Bentyl made him sleepy (Tr. 209). The following month, Plaintiff underwent surgery for adhesive capsulitis of the right shoulder without complications (Tr. 179, 234). In May, 2010, he reported that his shoulder condition was "markedly improved" as a result of surgery (Tr. 229). Dr. Shapiro's treating notes from the same month state that Plaintiff was referred to a dietician (Tr. 207). An October EMG of the right upper extremity was unremarkable (Tr. 243).

### 2. Non-Treating Sources

In January, 2010, Jai K. Prasad, M.D. performed a consultative physical exam on behalf of the SSA (Tr. 162-167). Plaintiff reported tingling and numbness of the right arm and left leg (Tr. 162). He denied vision problems but reported episodes of hypoglycemia (Tr. 162).

Dr. Prasad noted normal corrected vision with "minimal signs of retinopathy" (Tr. 163). He noted a normal gait, but sensory loss in three fingers and reduced grip strength on the right (Tr. 163). Plaintiff's abdomen appeared non-distended (Tr. 164). He exhibited normal ranges of motion in the upper extremities but had a rotator cuff injury to the right shoulder (Tr. 164). Dr. Prasad concluded that Plaintiff was able to work with his hands and "could do work according to his strength" (Tr. 165).

The following month, Amy Schlag performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift 10

-5-

pounds occasionally and less than 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 169). Plaintiff was limited to occasional stooping, kneeling, crawling and climbing of stairs and ramps and precluded from all climbing of ropes, ladders, and scaffolds (Tr. 170). Schlag found that Plaintiff could balance on a frequent basis (Tr. 170). Plaintiff's manipulative limitations consisted of no overhead reaching on the right (Tr. 171). Schlag found that Plaintiff should avoid concentrated exposure to hazards such as machinery or heights (Tr. 172). She concluded that Plaintiff was partially credible, noting that his ability to shop, drive, make simple meals, take out the trash, and perform online research for his classes undermined the disability claim (Tr. 173).

### 3.   Medical Records Submitted After the ALJ's February 16, 2011 Decision

Plaintiff attached one page of April, 2013 treating records by Steven Lis, D.O. to his motion for summary judgment. *Docket #10* at 2. Dr. Lis' notes state that Plaintiff currently experienced peripheral neuropathy, gastroparesis, and anxiety. *Id.* The same notes state that Plaintiff was currently taking Motrin 800. *Id.*

March, 2013 Records attached to Plaintiff's "Motion for Remand" state a diagnosis of diabetic retinopathy. *Docket #16* at 10. Also attached is an undated opinion letter by Opada Alzohaili, M.D., stating that Plaintiff required the use of an insulin pump to avoid hypoglycemia. *Id.* at 11. Dr. Alzohaili stated that gastroparesis exacerbated Plaintiff's ability to control his blood sugar levels (Tr. 11).

### C.   The Vocational Testimony

-6-

VE Harrison testified that none of Plaintiff's past relevant work skills were transferrable to other positions (Tr. 49). The ALJ then posed a hypothetical question to the VE, taking into account Plaintiff's age, education and work history:

> [A]ssume an individual . . . who can only lift or carry 10 pounds frequently and 20 pounds occasionally, who can stand or walk with normal breaks for a total of six hours in an eight-hour workday who could sit with normal breaks for a total six hours in an eight-hour workday, who could perform pushing and pulling motions with their upper and lower extremities within those weight restrictions, but no overhead reaching with the right upper extremity, who could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching but only occasionally with the right hand only, who's right hand dominant, who should avoid unprotected heights and moving machinery, and who should also avoid vibrations, who could perform each of the following postural activities occasionally, climbing ramps and stairs, stooping, kneeling or crawling and who could balalnce frequently, but no crouching. An who should avoid climbing ropes, ladders and scaffolds. Could such a hypothetical person be capable of performing any of claimant's past work . . . ? (Tr. 49-50).

The VE testified that the above restrictions would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the light,[2] unskilled work of a school bus monitor (1,500 jobs in the Detroit metropolitan area); sedentary, unskilled work of a surveillance monitor (1,500); and light, semiskilled work of an alarm monitor (2,500) (Tr. 50-51). The VE testified that if the individual were unable to perform sedentary work

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

for 40 hours a week, all gainful employment would be precluded (Tr. 51-52).

**D.     The ALJ's Decision**

Citing the medical records, ALJ Neumann found that as of the date last insured of December 31, 2010, Plaintiff experienced the severe impairments of adhesive capsulitis of the right shoulder but that the condition did not meet or equal any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).  The ALJ found that Plaintiff retained the Residual Functional Capacity for light work with the following additional limitations:

> The claimant could walk or stand with normal breaks for a total of six hours in an eight-hour workday.  The claimant could sit with normal breaks for a total of six hours in an eight-hour workday.  The claimant could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions but no overhead reaching with the right upper extremity.  The claimant could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching but only occasionally with the right hand only.  The claimant is right hand dominant.  The claimant should avoid unprotected heights, moving machinery, and vibrations.  The claimant could occasionally climb ramps and stairs, stoop, kneel, and crawl.  The claimant could frequently balance but never crouch.  The claimant should avoid climbing ladders, ropes, and scaffolds (Tr. 14-15).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the work of a school bus monitor, surveillance monitor, and alarm monitor (Tr. 20).

The ALJ found Plaintiff's allegations of disability as a result of shoulder problems and diabetes complications "not completely credible" (Tr. 18).  He noted that Plaintiff did not cease working on June 15, 2007 as a result of physical limitations but rather, because it was discovered that he was a convicted felon (Tr. 18).  The ALJ noted further that although Plaintiff alleged disability as of June, 2007, he did not seek treatment until almost one year

-8-

later (Tr. 19). The ALJ cited Dr. Shapiro's findings that Plaintiff was "doing well" (Tr. 19). The ALJ noted that while Plaintiff's ability to obtain a degree and continue enrolling in classes was "admirable," it detracted from the allegations of disability (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Plaintiff's Request for a Sentence Six Remand Should be Denied

Plaintiff, proceeding *pro se,* has filed a  motion for summary judgment, arguing briefly that his physicians during the period under consideration by the ALJ mis-diagnosed or overlooked his conditions, thereby making them worse. *Docket #10* at 1.  Plaintiff later filed a motion for remand, stating his former physicians were incompetent, urging the Court to consider a letter from his current endocrinologist, Dr. Alzohaili.  *Docket #16* at 1; *see also* pg. 6, above.  Plaintiff argues that stomach pain as a result of gastroparesis creates concentrational problems, gas, and dizziness and that he now takes nine medications on a

daily basis for gastroparesis, anxiety, irritable bowel syndrome, diabetes, neuropathy, and "an under active thyroid." *Id.* at 1-2. He reiterates that Dr. Shapiro, his physician during the time under consideration, was remiss in failing to diagnose all of his conditions. *Id.* at 2. He also argues that all of the newly submitted material is "relevant to the case back in 2007." *Id.* at 4. He states that "now in 2013[,] the only thing that has changed is that my conditions are worse." *Id.* at 4.

Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for remand based on such material, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g). The fact that these treating records were not created until after the ALJ's opinion was issued constitutes "good cause" for their tardy submission. *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 641 (E.D.Mich.2005).

However, Plaintiff cannot show that any of the newer records are material to the ALJ's February 16, 2011 decision. To show that the newer evidence is material, Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir.1988). April, 2013 treating records showing that Plaintiff is now being treated for peripheral neuropathy, anxiety, and gastroparesis do not establish that these conditions caused workplace

impairments prior the DLI of December 31, 2010 or the ALJ's February 16, 2011 decision. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan* 923 F.2d 1175, 1182 (6th Cir. 1990)(citing 42 U.S.C. § 423(a) and (c)). "'The existence of a medically determinable impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings.'" *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)). More significantly, Dr. Lis' record does not state or even suggest that the conditions caused work-related limitations prior to either the date last insured of December 31, 2010 or the February 16, 2011 decision.

Likewise, an undated letter by Dr. Alzohaili stating that Plaintiff requires the use of an insulin pump, *Docket #16* at 11, by Plaintiff's own description, appears to post-date the ALJ's decision. *See Id.* at 3. Even assuming that Dr. Alzohaili's letter was created during or soon after the relevant period, the opinion that Plaintiff requires an insulin pump does not support the presence of greater limitations than those found in the RFC. While Plaintiff contends that the conditions that he experiences now were present but undiagnosed during the relevant period, he nonetheless acknowledges that his conditions have worsened in the years post-dating the decision. *Id.* at 4. If he believes that he can establish disability for a period post-dating the period currently under consideration, his remedy is to file a new claim for benefits. *Sizemore, 865* F. 2d at 712.

**B. Substantial Evidence Supports the ALJ's Decision**

-12-

In addition to the Sentence Six arguments, Plaintiff argues that the ALJ erroneously found that part-time work as a lawn mower constituted substantial gainful activity. *Docket #16* at 4. He contends that the condition of gastroparesis was well established during the relevant period. *Id.*

However, the ALJ's choice of severe impairments and RFC is well supported by the record. The ALJ did not find that the part-time work as a lawn mower constituted substantial gainful activity, but rather, permissibly noted that the ability to mow lawns part time undermined the claim of constant, disabling pain (Tr. 19). The credibility determination is otherwise well developed. The ALJ noted that the claim of disability occurring in June, 2007 was contradicted by Plaintiff's acknowledgment that he had been fired that month after it was discovered that he had been convicted of a felony (Tr. 18 citing 109). The ALJ observed that Plaintiff was able to care for himself, prepare simple meals, shop in stores and online, exercise until December, 2009, and participate in an online degree program requiring 10 hours of study each week (Tr. 19). Assuming that the condition of gastroparesis was present but undiagnosed during the relevant period, his ability to engage in a number of personal and school and work-related activities undermines the claim that the stomach condition created greater limitations than those found in the RFC.

In closing, I note that Plaintiff's qualification for DIB, based on his prior earnings, was premised on establishing disability before December 31, 2010. The determination that Plaintiff was not disabled before the expiration of DIB is well supported. However, the question of whether the evidence establishes disability *after* that date is not before the Court.

-13-

If Plaintiff believes that his condition has deteriorated since that time and wishes to reapply for benefits, he faces no deadline for obtaining Supplemental Security Income ("SSI"), provided that she can show disability and financial need. *Willis v. Sullivan*, 931 F.2d 390, 392, fn. 1 (6th Cir.1991); 42 U.S.C. § 1382.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment [Doc. #13] be GRANTED and Plaintiff's motion [Doc. #10] DENIED. I further recommend that Plaintiff's motion to remand [Doc. #16] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall

-14-

address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 14, 2014                    s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on January 14, 2014, electronically and/or by U.S. mail.
                                           s/Michael Williams
                                           Case Manager to the
                                           Honorable R. Steven Whalen